262 P.3d 646 (2011)
The PEOPLE of the State of Colorado, Petitioner,
In the Interest of A.G., A.G., R.B. and N.B., Minor Children, and
Concerning C.M., Respondent.
No. 10SC330.
Supreme Court of Colorado, En Banc.
October 17, 2011.
*647 Mendenhall & Malouff, R.L.L.P., Phillip F. Malouff, Jr., La Junta, Colorado, Attorneys for Petitioner Otero County Department of Human Services.
Davide C. Migliaccio, Colorado Springs, Colorado, Attorney for Respondent C.M.
Kim R. Verhoeff, Lamar, Colorado, Guardian ad Litem for A.G., A.G., R.B., and N.B.
Justice MARTINEZ delivered the Opinion of the Court.

I. Introduction
In this case, we review a judicial disqualification issue raised by the court of appeals' decision to reverse and remand a district court order terminating the parental rights of the respondent, C.M. ("Mother"). In its review of the termination hearing, the court of appeals held that the trial judge should have recused himself on the grounds that his clerk was the mother of a material witness in the case. Although the court of appeals held that the judge should have been disqualified, Mother's lateness in filing the motion for disqualification prompted the court to conclude that Mother may have waived her right to move for disqualification. According to the court of appeals, the question of whether Mother had waived the disqualification issue turned on whether her counsel was ineffective for failing to timely file the motion for disqualification. Reasoning that Mother could not be bound by waiver if she had in fact received ineffective assistance of counsel, the court of appeals remanded for additional findings about counsel's performance. Accordingly, the court directed the chief judge of the district to transfer the case to himself *648 or to a senior judge for the proceedings on remand.
This court has not yet decided whether an ineffective assistance claim may be raised in a termination hearing, nor have we decided what standard to use when evaluating such a claim. Assuming that such a claim is cognizable in the context of a termination hearing, however, a prima facie case for ineffective assistance of counsel would require, at the least, an allegation that a party has suffered prejudice as a result of counsel's errors.
In this case, Mother alleged that the judge should have been disqualified because his clerk's relationship with a material witness created an appearance of impropriety. Because Mother's motion for disqualification was entirely based on an appearance of impropriety, rather than a claim of actual bias, it failed to satisfy the prejudice element necessary to prevail on an ineffective assistance claim. As a result, a remand for additional findings on ineffective assistance is unwarranted. Having determined that Mother could not present a cognizable ineffective assistance claim, we are left with the conclusion of the court of appeals that Mother's motion for disqualification was untimely. We agree that the motion was untimely and do not reach the question of whether the relationship between the judge's clerk and the witness required recusal.
In addition to deciding the disqualification issue, the court of appeals also concluded that the trial court made insufficient findings as to some of the statutory criteria for termination and remanded for additional findings regarding the appropriateness of termination. We have not reviewed and do not disturb the portion of the court of appeals opinion reversing the order of termination and remanding for additional findings on the appropriateness of termination. However, we reverse the order of the court of appeals requiring the trial court to determine on remand whether Mother received ineffective assistance of counsel. We also vacate the court of appeals' directions to the chief judge to transfer the case to a different judge. The judge who presided over the termination hearing may make the findings required by the court of appeals on remand.

II. Facts and Proceedings
In October of 2007, a four-year-old child died in Mother's home. Mother was not the biological parent of the child, but because the child died as a result of chronic abuse and neglect, Mother's four biological children, who also lived in the home, were taken into protective custody by the petitioner, the Otero County Department of Human Services ("the Department"). The Department immediately filed a dependency and neglect petition on behalf of Mother's children, and Mother was charged with child abuse for her role in the death of the four-year-old child, who was the daughter of her live-in boyfriend.
On January 7, 2008, the trial court decreed Mother's children to be dependent and neglected. The court adopted a treatment plan for Mother that required her to meet certain goals, which included maintaining self-sufficiency, sobriety, and mental stability, and participating in a psychological evaluation. After Mother failed to achieve all of these goals, the Department filed a motion to terminate her parental rights.[1]
Otero County is a small county in southeast Colorado which, together with the other two counties in the 16th Judicial District, employs a total of two district court judges. In this case, the same judge presided over the criminal trial, the dependency and neglect proceedings, and the termination hearing. At the termination hearing, a caseworker testified on behalf of the Department as the primary witness regarding Mother's compliance with the treatment plan. The caseworker, who also testified for the prosecution in the criminal trial, is the daughter of the judge's clerk. The clerk provided administrative assistance to the judge in most or all of the proceedings at the trial court level, including the termination hearing. Mother's attorney knew of the clerk's relationship with *649 the caseworker from the time the dependency and neglect proceedings began in 2007. Mother also knew about the relationship, having been advised about it during her criminal trial.
On April 8, 2009, the trial court issued an order terminating Mother's parental rights. In the order, the court relied heavily on the testimony of the caseworker. Two weeks later, Mother filed a motion to disqualify the judge, reasoning that the judge's impartiality could reasonably be questioned because the judge, by imputation, is related to a testifying agent for the Department. Simultaneously, Mother filed a motion for a new trial on the basis that the judge should have sua sponte recused himself. She also alleged that she was entitled to a new termination hearing because she had received ineffective assistance of counsel when her lawyer did not timely file a motion to recuse, despite having prior knowledge of the relationship between the clerk and the caseworker. The judge denied both motions, finding that he had no conflict of interest because he had no contact with the caseworker outside of the courtroom.
On appeal, the court of appeals reversed and remanded the case after holding that the trial court erred by determining that the relationship between the clerk and the caseworker did not require recusal. People ex rel. A.G., ___ P.3d ___, ___, 2010 WL 1492311 (Colo.App.2010) (selected for official publication). The court concluded that the relationship created an appearance of impropriety sufficient to warrant recusal, because "[a] disinterested observer could reasonably believe that the judge's ability to make unbiased credibility determinations about the caseworker, the child of his court clerk, would be impacted by the judge's relationship with the court clerk." Id. at ___. In reaching this conclusion, the court relied on the Colorado Judicial System Personnel Rules[2] and the Code of Conduct for federal judicial employees,[3] as well as Colorado's disqualification statutes[4] and canons of judicial ethics.[5]
Although the court of appeals held that the trial judge should have recused himself, it remanded the case for a determination of whether Mother waived her right to move for disqualification. Id. at ___. Because Mother's counsel knew of the relationship long before the termination hearing began, and yet did not file a motion to recuse until after the decision in the termination hearing was announced, the court of appeals held that the motion to recuse was untimely and that, therefore, Mother may have waived the recusal issue. Id. at ___, ___.
However, the court of appeals concluded that a finding of waiver in this case depends upon whether the failure to timely seek recusal amounted to ineffective assistance of counsel. Id. at ___. The court explained that in order for Mother to overcome the waiver argument and prevail on a claim of ineffective assistance of counsel, she must prove that: (1) counsel's actions fell below *650 the standard of care; and (2) she was prejudiced by counsel's action. Id. at ___.
As to the prejudice prong, the court summarily declared that it had been satisfied because if the motion were timely filed, the judge would have recused himself and Mother would have been entitled to a new termination hearing. Id. Nonetheless, the court of appeals remanded the case because it did not have sufficient information to determine whether counsel's actions fell below the standard of care. Id. at ___. Specifically, the court sought to determine why counsel did not timely file the motion and whether the failure to file was a matter of trial strategy. Id.[6]
We granted certiorari on the substantive issue of whether the court of appeals erred by deciding that the family relationship between the court clerk and a material witness required the trial judge to recuse himself. Although we granted certiorari on this substantive issue, we conclude that the court of appeals did not need to reach this issue because the untimeliness of the claim and the insufficiency of the allegations for ineffective assistance of counsel preclude a discussion of whether the judge was required to recuse.

III. Analysis

a. The Difference Between Actual Bias and an Appearance of Impropriety
Mother alleges one essential fact as the basis of her motion for disqualification: the judge's clerk is the mother of the Department's key witness. This fact alone does not provide any reason to suspect that the judge is personally biased or prejudiced. Instead, the fact presents, at most, a concern about a potential appearance of impropriety[7] caused by the parental relationship between the judge's employee and a material witness.
Although the court of appeals focused its disqualification analysis on the rules governing the conduct of judicial employees, the question of whether a judge should recuse entirely depends on the impropriety or the potential appearance of impropriety caused by the judge's involvement in the case. Recusal may result from either allegations of actual bias or allegations of a mere appearance of impropriety, but there is a noticeable difference between the two concepts.
In Colorado, the Code of Judicial Conduct requires disqualification of a judge "in any proceeding in which the judge's impartiality might reasonably be questioned." C.J.C. 2.11(A). In other words, a judge must recuse whenever the judge's involvement with a case might create the appearance of impropriety. A judge who is disqualified based on an appearance of impropriety may be able to act impartially, but the judge is disqualified nonetheless because a reasonable observer might have doubts about the judge's impartiality. This broad standard is intended to protect public confidence in the judiciary rather than to protect the individual rights of litigants. People v. Gallegos, 251 P.3d 1056, 1063 (Colo.2011); see also C.J.C. 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary. . . ."). Because the concern is the reputation of the judiciary rather than protection of the parties, litigants may waive disqualification when the disqualification is not for reasons of actual bias or prejudice. See, e.g., C.J.C. 2.11(C).
In contrast, an actual bias is a bias "that in all probability will prevent [a judge] from dealing fairly with a party." People v. Julien, 47 P.3d 1194, 1197 (Colo.2002). The Code of Judicial Conduct mandates judicial disqualification when a judge "has a personal *651 bias or prejudice concerning a party or a party's lawyer. . . ." C.J.C. 2.11(A)(1). C.R.C.P. 97 requires disqualification of a judge who is "interested or prejudiced" in an action. Thus, actual bias focuses on the subjective motivations of the judge. In contrast to judicial canons seeking to prevent the appearance of impropriety, laws requiring disqualification of a biased or prejudiced judge are designed to ensure that litigants receive a fair, impartial trial. Gallegos, 251 P.3d at 1063. Consequently, there is no provision to waive disqualification when actual bias is the concern. See, e.g., C.J.C. 2.11(C).

b. The Prejudice Requirement
Without recognizing the significance of the distinction between actual bias and an appearance of impropriety, the court of appeals concluded that the judge's involvement in this case created an appearance of impropriety sufficient to warrant recusal. The court did not find evidence of actual bias. Nonetheless, when assessing the validity of Mother's ineffective assistance claim, the court presumed that Mother had been prejudiced by her counsel's untimely filing of the motion for disqualification. We hold that the prejudice element of an ineffective assistance claim premised on counsel's failure to file a motion for disqualification cannot be satisfied without an allegation that the judge was actually biased. Because Mother's motion for disqualification did not allege that the judge was actually biased, her claim of ineffective assistance of counsel is deficient on its face.
This court has not yet decided whether an ineffective assistance claim can be raised in a termination hearing. The court of appeals however, has held that the standard for evaluating a claim of ineffective assistance of counsel in a termination hearing is the same one used for evaluating a claim of ineffective assistance in a criminal case. People ex rel. C.H., 166 P.3d 288, 290-91 (Colo.App.2007). The standard comes from the United States Supreme Court case, Strickland v. Washington, which enunciated the test as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court of appeals applied the Strickland analysis to a termination hearing, concluding that the parent must prove two elements in order to succeed on a claim of ineffective assistance of counsel: "(1) counsel's performance was outside the wide range of professionally competent assistance; and (2) the parent was prejudiced by counsel's errors." C.H., 166 P.3d at 291; see also Strickland, 466 U.S. at 687, 104 S.Ct. 2052. We decline to decide whether Strickland applies to a claim of ineffective assistance in a termination hearing, but we acknowledge that if such a claim is cognizable, at the very least, an allegation of prejudice would be required.
The standard for proving prejudice in an ineffective assistance claim is rigorous, requiring that counsel's errors be so serious as to deprive the moving party of a fair trial with a reliable result. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The reviewing court looks at whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. Reasonable probability is defined as the probability sufficient to undermine a rational person's confidence in the result of the trial. Id. If the moving party fails to make an affirmative demonstration of prejudice, the court may resolve the claim on that basis alone. People v. Garcia, 815 P.2d 937, 941 (Colo.1991).
Other states have held that a defendant does not automatically satisfy the prejudice element merely by showing that disqualification would have been required had counsel timely filed a motion to disqualify. Thompson v. State, 990 So.2d 482, 489 (Fla.2008) (holding nevertheless that the prejudice requirement was satisfied because the judge evinced actual bias as to the outcome of the case). For example, Wisconsin's court of appeals held that even though a timely request would have resulted in disqualification, there was no showing that the proceeding was fundamentally unfair or that the judge was not impartial, and therefore, the defendant failed to prove the prejudice prong of his ineffective assistance claim. State v. Damaske, *652 212 Wis.2d 169, 567 N.W.2d 905, 918 (Wis.Ct.App.1997).
Unlike the situation where a judge's involvement creates a mere appearance of impropriety, when a judge evinces actual bias towards the outcome of a case, disqualification of the judge is necessary to prevent prejudice to the parties. Consequently, when counsel fails to timely file a motion for disqualification to remove a biased judge, a party may be prejudiced by counsel's error.
In contrast, while we recognize the importance of disqualifying a judge whose impartiality might reasonably be questioned, a claim that a judge's involvement creates an appearance of impropriety does not suggest that the judge is actually prejudiced. Only when a judge is actually biased or prejudiced is there reason to question the reliability of the result of the proceeding.
In the present case, Mother has failed to allege facts that would prove prejudice. At most, she has alleged that there may have been an appearance of impropriety, but she has not alleged that the proceeding was fundamentally unfair or that the judge was not impartial. The motion for a new trial states that Mother has suffered prejudice because the failure to file a motion for disqualification "resulted in a scenario where impartiality can definitely and reasonably be questioned and in a scenario where the Trial Judge, by imputation, is related to a testifying agent/party." This allegation, however, does not contain any facts to support a conclusion that the judge was actually biased. The only fact presented to support Mother's allegation of prejudice is the relationship between the clerk and the caseworker, which, if the relationship were imputed to the judge, would fall under the category of appearance of impropriety.
The court of appeals maintained that Mother suffered prejudice in that, had the recusal motion had been timely, Mother would have been entitled to a different termination hearing before a different judge. This conclusion fails to focus on the key concern of the prejudice prong: whether the result of the proceeding would have been different. The court of appeals did not conclude, and there has been no evidence presented, that the result of the termination hearing may have been different if the judge had recused himself. There is no evidence that the judge was interested in, or prejudiced as to, the outcome of the case, or that he was in any way influenced by his clerk's relationship with the department's witness. We will not presume from an appearance that the judge was actually biased. Without an assertion of prejudice, counsel's failure to move for disqualification cannot be the basis of a valid claim for ineffective assistance of counsel.

c. Timeliness
Because we have determined that the claim for ineffective assistance of counsel is deficient on its face, there is no need to remand for additional findings regarding counsel's failure to timely file the motion for disqualification. We are left with the question of how to address the motion for disqualification.
Although C.R.C.P. 97 does not specify the time when a motion for disqualification should be filed, "good faith and orderly process dictate that if grounds for disqualification are known at the time the suit is filed and a party desires to proceed thereon, a motion to disqualify should be filed prior to taking any other steps in the case." Aaberg v. Dist. Court, 136 Colo. 525, 529, 319 P.2d 491, 494 (1957). If grounds for disqualification are known and not promptly raised, it may constitute waiver, depending on the facts and circumstances of the case. Johnson v. Dist. Court, 674 P.2d 952, 957 (Colo. 1984). In particular, Colorado courts have held that when a party knows of grounds for disqualification but waits to file a motion until after an adverse judgment has been issued, the motion is barred by waiver. In re Marriage of Fifield, 776 P.2d 1167, 1168 (Colo.App.1989). Furthermore, in a similarly situated case, the court of appeals deemed a motion to recuse untimely when it was filed right before the termination hearing, thirty-eight months after the dependency and neglect action was started, twenty-one months after the father was acquitted in the criminal case, and fourteen months after the motion to terminate parental rights was filed. People *653 ex rel. S.G., 91 P.3d 443, 449 (Colo.App. 2004). Other cases have held disqualification motions to be untimely when they were filed a year or later from the time that the grounds for disqualification were known. See, e.g., Holland v. Bd. of Cnty. Comm'rs, 883 P.2d 500, 510 (Colo.App.1994).
A motion for disqualification must be timely filed so that a judge has the opportunity to ensure that a trial proceeds without any appearance of impropriety. When the motion for disqualification is not made until a ruling has been issued, the motion does not give the judge an opportunity to disqualify himself. Instead, the motion serves as a challenge to the judgment of the court. Accordingly, such a motion should not be granted unless the judgment is suspect due to the actual bias of the judge. When the grounds for recusal based on an appearance of impropriety are known to counsel, but a motion for disqualification is not filed until after an adverse ruling, any damage to the reputation of the judiciary cannot be undone. Moreover, were we to require a new termination hearing in these circumstances, we might encourage an untimely motion to recuse as a means to a second chance with a different judge. Such an outcome would waste judicial resources and further damage the reputation to the judiciary.
In this case, Mother did not file a motion for disqualification until approximately a year-and-a-half after the criminal and dependency and neglect proceedings had begun. The motion was filed after the adverse ruling in her termination proceeding and six months after she began serving time for her child abuse conviction. Mother was advised of the relationship during the criminal proceeding, and Mother's counsel was aware of the relationship from the beginning of the case. Accordingly, Mother had the opportunity to seek disqualification far in advance of her termination hearing. Because the motion was not filed until after an adverse ruling, however, we view it as a challenge to the judgment. The allegations in the motion do not cause us to question the reliability of the judgment. Therefore, we hold that the motion was untimely and should not have been granted.

IV. Conclusion
We return this case to the court of appeals with directions to remand to the trial court for proceedings consistent with this opinion.
NOTES
[1] In October of 2008, during the termination process, Mother began serving a six-year prison sentence for child abuse.
[2] The Colorado Judicial System Personnel Rules require a court employee to avoid involvement in any matter in which the employee has a personal, business, or family interest. C.J.S.P.R. 22(c). The rules do not specify how to proceed when a court employee is related to a material witness or whether the existence of a familial relationship constitutes an "interest" that requires removal of the employee from the matter.
[3] The Code of Conduct for Judicial Employees, which governs the conduct of federal judicial employees, explicitly prohibits a clerk from performing any official duties in a matter in which the clerk knows that a person within the third degree of relationship to the clerk is likely to be a material witness. C.C.J.E. 3(F)(2)(a)(iv), available at http://www.uscourts.gov/uscourts/Rules AndPolicies/conduct/Vol02A-Ch03.pdf. Colorado does not have a parallel rule.
[4] Section 16-6-201(1)(d), C.R.S. (2011), requires disqualification of a judge in a criminal proceeding who "is in any way interested or prejudiced with respect to the case, the parties, or counsel." In the civil context, C.R.C.P. 97 requires disqualification when a judge is "so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein."
[5] The Code of Judicial Conduct requires a judge to disqualify himself in any proceeding in which the judge's impartiality might be questioned, including when the judge knows that a person within the third degree of relationship to the judge or the judge's spouse is "likely to be a material witness in the proceeding." C.J.C. 2.11(A)(2)(d).
[6] Because the court of appeals found the trial court's findings insufficient on the statutory criteria for termination, it also remanded for additional findings regarding the appropriateness of termination. Specifically, it directed the trial court to consider whether a less drastic alternative exists and whether termination is appropriate based on the children's physical, emotional, and mental needs. We have not reviewed and do not disturb this portion of the judgment.
[7] Because our decision in this case does not require it, however, we decline to decide whether the parental relationship between a judge's clerk and a material witness for the governmental party in the case creates an appearance of impropriety.