23CA1424 Marriage of Combs 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1424
City and County of Denver District Court No. 15DR31064
Honorable Demetria E. Trujillo, Judge

In re the Marriage of

Shelly Dill Combs n/k/a Shelly Dill Keeney,

Appellee,

and

Scott Michael Combs,

Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE RICHMAN*
Dunn and Navarro, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Van Horn Family Law, PC, William Van Horn, Bethany Harrell, Alyssa Dahl,
Littleton, Colorado, for Appellee

William Peters, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const.
art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this post-decree proceeding, Sean Michael Combs (Combs) appeals the district court's order adopting a magistrate's ruling regarding parenting time and child support.  We refer to the parties by last names, as appellant largely did in the opening brief.  Combs uses the pronouns zer/Zer/theirs.  We affirm.

## I.    Background

¶ 2    The parties divorced in 2016.  The two children of the marriage were seventeen and thirteen at the time of this appeal.  As relevant here, in November 2021, Shelly Dill Combs (Dill) moved for a court order to address parenting time and enforce child support orders (Dill's motion).  A magistrate heard the motion in September 2022 and issued an order several months later (November 2022 order).  After Combs' petition for review, the district court upheld the magistrate's order.

## II.    Dill's Answer Brief Is Not Deficient

¶ 3    Combs asserts that Dill's answer brief does not comply with C.A.R. 28(a) and should be stricken.  Dill's answer brief doesn't raise new issues on appeal; it challenges Combs' arguments.  The answer brief includes the reasoning behind Dill's arguments and points us to relevant legal authority supporting those assertions.

1

*See* C.A.R. 28(a)(7)(B) (requiring arguments in a brief to contain contentions and reasoning, with citation to authorities and parts of the record relied on); *see also* C.A.R. 28(b) (appellee's answer brief must conform to the requirements of C.A.R. 28(a)). Combs' argument that Dill's brief is improper is meritless.

### III.   Sufficient Evidence

¶ 4    Combs contends that the district court erred when it concluded that the magistrate had sufficient evidence to support its November 2022 order. Specifically, Combs asserts that the magistrate's determination of sufficiency was "belied by its own finding" that it had not "heard anything about [Dill's motion's] issues." The court did not err.

### A.   Relevant Law and Standard of Review

¶ 5    Our review of a district court's order reviewing a magistrate's ruling is effectively a second layer of appellate review. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22. We review de novo issues of law and, like the district court, must accept the magistrate's factual findings unless they are clearly erroneous. *Id.*

¶ 6    Determinations about the weight and credibility of the evidence is within the trial court's (here, the magistrate's) sole

discretion. *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court."). The magistrate "can believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review." *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007).

## B. Analysis

¶ 7     Combs alleges that the magistrate did not have sufficient evidence to determine the issues in Dill's motion. The magistrate made findings related to each issue, and we conclude that sufficient evidence supports the order.

### 1. Civil Communicator

¶ 8     Dill requested an order clarifying the "requirements of the parties as to communication." A previous order had required the parties to use a service called Civil Communicator. At the hearing, Combs acknowledged that zer had been blocked from using the service because of inappropriate or confrontational messages. Combs testified that zer refused to communicate through Civil

Communicator because zer preferred to communicate through counsel. Dill testified that she relies on Civil Communicator and that it makes her life better, but that she "needs [financial] help" to afford the service.

¶ 9 The magistrate — discounting Combs' testimony and crediting Dill's, and citing an example as to why the communicator was necessary — found it appropriate for the parties to continue to use Civil Communicator and ordered them to do so until the youngest child turns eighteen years old. The magistrate also ordered Combs to pay for the service. The findings are supported by the record, and the orders were within the magistrate's discretion.

### 2. Communication Regarding Out-of-State Travel and Contact Information

¶ 10 Dill requested that the court enforce a prior stipulation in which the parties agreed to inform one another about the children's location when traveling out of state. Dill testified that the children would be evasive about where they were during Combs' parenting time and she would then, for example, find "a receipt in their pocket from being in Texas." Dill testified that she had no issue with

Combs taking the children out of state but wanted to be informed about these trips.

¶ 11 The magistrate sanctioned Combs for violating a prior stipulation, finding that zer had a "history of removing the children from the state and traveling to Texas without advance notice to [Dill]." The magistrate then ordered that "[e]ither parent shall inform the other parent if they are traveling with the children out of state." The magistrate ordered Combs to allow Dill to add a tracking application to the children's cell phones so "she can be aware of the children's location while they travel out of state." And the magistrate ordered Combs to post a bond to secure payment to Dill if zer turned the locator device off. The magistrate's findings are supported by the record and the orders were within the magistrate's discretion.

### 3. Extracurricular Activities and Transportation

¶ 12 Dill argued that Combs refused to take the children to their extracurricular activities, and Dill asked the magistrate to order Combs to arrange for the children's transportation during zer's parenting time by either driving them or arranging for appropriate transportation. At the hearing, Dill testified that Combs refused to

transport the children to their extracurricular activities and instead improperly relied on transportation services that do not permit children to ride alone. Combs' paralegal and roommate also transported the children. The children were dropped off by these drivers at the parents' exchange location — a grocery store parking lot — when Dill was not yet there to pick them up. Dill testified that she felt this was unsafe for the children.

¶ 13 The magistrate found that the parent who has parenting time is responsible for transporting the children to their extracurricular activities and ordered that the responsible parent must arrange for transportation, using a service that permits the transportation of children under eighteen years old. The person dropping off the children should not leave until they confirmed that the receiving person is present. Again, these findings were supported by the record, and the orders were within the magistrate's discretion.

4. Access to the Children's Cell Phones

¶ 14 Dill informed the magistrate she does not have access codes to monitor the children's phones to ensure they are not accessing inappropriate content. Combs' counsel informed the court that it

6

was zer's position that zer did not need to provide them to Dill, and Combs then testified that the phones were already monitored.

¶ 15    The magistrate found that although Combs considered it unnecessary for Dill to have access codes to the children's phones in order to monitor them, Dill had a right to communicate with the children and have reasonable cell phone access. The magistrate thus sanctioned Combs for interfering with Dill's access by allowing Dill to add an application to the children's phones so she could be aware of their locations when they traveled out of state. And the magistrate also ordered that if Combs did not cooperate with Dill in installing the applications, Dill could provide the children with alternative cell phones, and Combs would be obligated to reimburse Dill for the costs of such phones. Again, these findings were supported by the record, and the orders were within the magistrate's discretion.

### 5. Medical Expenses

¶ 16    Dill requested that the court require Combs to pay all of the children's medical and vision expenses, as the parties had previously agreed in a 2019 stipulation adopted by the court (2019 stipulation). The court discounted Combs' testimony suggesting

that zer could not recall zer's income. The court took judicial notice of Combs' sworn financial statement, which indicated that zer's monthly income is $14,000. According to Exhibit 3 and Exhibit 28, which were admitted, Combs owes Dill $5,712.29 in previously incurred medical expenses. The court then found that Combs' monthly income was sufficient to cover these costs and ordered the expenses to be paid within 60 days. These findings are supported by the record, and the order was within the magistrate's discretion.

6.     School Supplies and Extracurricular Activity Expenses

¶ 17     Dill testified that the parties had agreed to split costs for school supplies and extracurricular activities as part of a stipulated 2017 court-ordered permanent parenting plan (2017 stipulation). She also relied on Exhibit 3, containing receipts for school expenses and extracurricular activities. She testified that the parties previously agreed — in the 2019 stipulation — that Combs would pay for piano lessons in their entirety, but Combs stopped paying for those lessons.

¶ 18     The magistrate found that the parties had agreed to evenly split the children's non-medical expenses, except for piano, which Combs would pay for. The magistrate found that Exhibit 3 was the

best evidence of expenses and found that Combs has sufficient income to make the court-ordered payments. The magistrate ordered Combs to pay Dill $240 to cover the piano lessons, and $3,425.71 to cover the extracurricular activities and school supply expenses, within 60 days. Again, these findings are supported by the record, and the orders were within the magistrate's discretion.

### 7. Denver Academy Payments

¶ 19 Dill requested that the court order Combs to pay one child's Denver Academy (DA) tuition fees, as the parties had previously agreed in 2020. Dill testified that Combs had only, as of the day of the hearing, signed the DA payment agreement, but zer did not upload the fiduciary agreement on Civil Communicator. The magistrate ordered that Combs "remains responsible for all [DA tuition] payments until [the child's] graduation." These findings are supported by the record, and the orders were within the magistrate's discretion.

¶ 20 As detailed above, evidence supports the magistrate's order regarding each disputed issue in Dill's motion. The magistrate's statement, during the hearing, that Dill had not yet provided evidence on the issues in her motion does not erase this evidence.

The magistrate's written order, which controls, includes a summary of evidence relating to each issue presented in Dill's motion. *See In re Marriage of McSoud*, 131 P.3d 1208, 1221 (Colo. App. 2006) (district court could modify its oral findings or orders at any time before issuing a final written order). The district court, therefore, made no error in concluding that sufficient evidence supported the magistrate's determinations.

## IV.    Subpoena

¶ 21    Combs also argues that the magistrate erred when it did not require Dill to have subpoenaed zer's testimony at the September 2022 hearing. Combs did not adequately develop this argument. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development.").

¶ 22    Combs provides no relevant legal support for this argument. First, Combs cites to C.R.C.P. 45, which, under a subsection related to subpoenaing named parties, bars the subpoenaing of discovery from named parties without good cause. C.R.C.P. 45(a)(1)(D). Combs does not explain how this rule required Dill to subpoena zer's testimony. Second, Combs provides authority discussing the

power of a subpoena to compel attendance of a party at a hearing. *See, e.g., Redding v. Virginia Mason Med. Ctr.*, 878 P.2d 483, 486 (Wash. Ct. App. 1994) ("The function of a subpoena is to compel attendance at court proceedings . . . ."). But Combs does not explain how these cases require a named party who voluntarily appears at a hearing and gives their own testimony to have been subpoenaed to do so. Finally, Combs cites a case in which a division of this court applied a section of the Children's Code to compel the testimony of a non-party witness in a dependency and neglect proceeding. *See People in Interest of E.H.*, 837 P.2d 284, 289 (Colo. App. 1992). Combs does not explain how this Title 19 provision applies in zer's Title 14 case. Because Combs has not developed this argument, we decline to address it further. *See Barnett*, 252 P.3d at 19.

## V.    Bias or Appearance of Impropriety

¶ 23    Combs next contends that the magistrate exhibited bias against zer by (1) "engaging in a discriminatory discussion of zer's gender identity" in its written order; and (2) allowing testimony that zer considers dismissive to zer's gender identity. We are not convinced.

11

## A.    Additional Facts

¶ 24    During the hearing, Dill's counsel elicited testimony from Combs regarding zer's pronouns.  Dill's counsel then asked Combs if zer's pronouns were the same words as "a character in Superman who tries to kill all those who destroyed his family" or "a character in Ghostbusters" Combs' counsel did not object.  Nonetheless, the magistrate stopped the line of questioning, sua sponte, identifying it as unproductive.  The magistrate then asked Combs what zer would prefer to be called, and both the magistrate and Dill's counsel accepted Combs' request to be called "Zer".  The magistrate's written order also indicates that the court used "[r]espondent's pronouns."

## B.    Relevant Law and Standard of Review

¶ 25    Another division of this court has determined that "there is a difference between a judge who has the appearance of impropriety and a judge who has actual bias."  *See People v. Jennings*, 2021 COA 112, ¶ 18.  The Code of Judicial Conduct requires a judge to recuse when the judge's involvement with a case might create the appearance of impropriety, among other reasons.  C.J.C. 2.11(A); *see also People in Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011)

12

(when a litigant makes a claim that the court's decision has the appearance of impropriety, the inquiry is focused on "protect[ing] public confidence in the judiciary"). A judicial officer may therefore be disqualified when "a reasonable observer might have doubts about the judge's impartiality." *Jennings*, ¶ 19. However, "[b]ecause the concern is the reputation of the judiciary rather than protection of the parties, litigants may waive disqualification" based on the appearance of impropriety. *A.G.*, 262 P.3d at 650.

¶ 26 Actual bias is bias that "in all probability will prevent [a judge] from dealing fairly with a party." *Id.* (quoting *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002)). This includes circumstances in which the judicial officer "has personal bias or prejudice concerning a party or a party's lawyer." *Id.* at 650-51 (quoting C.J.C. 2.11(A)(1)). An inquiry to determine whether a judicial officer exhibits actual bias is focused on "the subjective motivations of the judge." *Id.* at 651. In a claim regarding actual bias, disqualification of the judge is meant to "ensure that litigants receive a fair and impartial trial." *Jennings*, ¶ 20. To show actual bias, "[t]he record must establish such bias clearly; mere speculative statements and conclusions are not enough." *Jennings*, ¶ 28.

¶ 27 Because disqualification based on actual bias is designed to ensure that litigants receive a fair trial, there is no provision for waiving it. *A.G.*, 262 P.3d at 651. Thus, claims for disqualification based on actual bias may be considered on appeal even when they were not raised in the fact-finding court. *See Jennings*, ¶ 21. We review a claim for disqualification based on actual bias de novo. *Id.* at ¶ 27.

### C. Analysis

¶ 28 Combs does not specify whether zer's claim relates to the magistrate's appearance of impropriety or actual bias. On the one hand, Combs quotes caselaw regarding the appearance of impropriety. But Combs did not seek to disqualify the magistrate based on an appearance of impropriety during the September 2022 hearing. *See Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 24 (tenant waived appellate review of argument that trial court judge's recusal was required where tenant did not raise argument in the trial court). Combs, therefore, waived any contention based on an asserted appearance of impropriety.

¶ 29 Combs' argument also suggests that the magistrate was actually biased when zer accused the magistrate of a "wholly

14

unnecessary, dismissive, and discriminatory discussion of zer's gender identity." Combs did not present this argument to the fact-finding court, but a claim of actual bias cannot be waived. *A.G.*, 262 P.3d at 651.

¶ 30 We conclude the record does not clearly indicate bias. The magistrate's written order recounts Combs' testimony that zer is transgender and nonbinary and uses the pronoun zer. The magistrate then indicates that the order uses Combs' pronouns. Because the magistrate's order recounts facts in the record as testified to by Combs, and explains the language used in the order, we perceive no actual bias. Similarly, the record shows that the magistrate foreclosed a line of questioning about zer's pronouns because the court found it unproductive; this, too, does not demonstrate clear bias against Combs.

VI.   Dill's Testimony

¶ 31 Combs contends that Dill's testimony, in its entirety, was "based on conclusory and/or bare bones statements, devoid of any specific facts or personal knowledge." Zer did not preserve this claim for our review.

15

¶ 32    Combs' attorney made many objections during Dill's testimony. For instance, he objected to the relevance of several exhibits and to Dill's testimony as nonresponsive. He generally objected to the admission of Exhibit 3 and to Dill's discussion of Combs' nonpayment of DA's tuition. But Combs' attorney never made a specific, contemporaneous objection to Dill's testimony on the basis of CRE 602. "In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record." *Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009). Thus, zer did not properly preserve it for our review.

## VII.    Law of the Case

¶ 33    Combs argues that the magistrate abused its discretion, violating the law of the case, when it "reinstate[d] . . . earlier legal stipulations . . . as those did not survive [a 2021] modification" (2021 order). Combs asserts that the 2021 order replaced the 2017 and 2019 stipulations upon which the magistrate relied when imposing expenses on zer in this case. We disagree.

¶ 34    The law of the case doctrine contains two branches, analyzed differently depending on whether the prior law of the case involves

the court's own rulings or the rulings of a higher court. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 23. When a higher court's rulings are at issue, the doctrine known as the mandate rule in those circumstances is not discretionary. *See id.* at ¶ 24. Under the mandate rule, the holdings of an appellate court become the law of the case, which a district court must follow on remand. *Id.*

¶ 35 When the court's own rulings are at issue, the doctrine generally requires the court to follow its prior relevant rulings made in the same case. *See Giampapa v. Am. Fam. Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003). "The doctrine applies to decisions of law. It does not apply to findings of fact . . . ." *Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 313 (Colo. App. 2007). In the trial courts, the "[a]pplication of law of the case by a trial court to its prior rulings is a discretionary practice." *Kuhn v. Dep't of Revenue*, 897 P.2d 792 n.5 (Colo. 1995). "A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair." *In re Marriage of Gromicko*, 2017 CO 1, ¶ 18.

¶ 36 Here, the magistrate followed the case's prior relevant rulings. The magistrate found, in its discretion, that the 2021 order

17

"modifie[d] only the issue that is specifically addressed in that order." The magistrate's 2021 order, which addressed parenting time and decision-making responsibility, also discussed several discrete expenses — the payment of a dog breeder fee and the fees for a Parental Responsibilities Evaluator — neither of which were at issue in this matter. Therefore, according to the law of the case, as the magistrate determined, the orders standing from 2017 and 2019 remained in force. We conclude that the magistrate correctly applied the law of the case.

## VIII. Attorney Fees

¶ 37     Dill requests that we award her attorney fees — assessed against Combs and zer's counsel — under C.A.R. 38(b), C.A.R. 39.1, and sections 13-17-101 and 14-10-119, C.R.S. 2024. We agree that the appeal is substantially frivolous, and we therefore grant Dill's request for an award of appellate attorney fees against Combs and counsel.

¶ 38     Frivolous appeals include those that lack any rational justification or are prosecuted for the sole purpose of harassment or delay. *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 934-35 (Colo. 1993). As relevant here, an appeal may be deemed frivolous

18

as argued where, for example, the appellant fails to set forth a coherent assertion of error. *See Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶¶ 39-40; *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).

¶ 39 Combs' appeal includes claims that lack any rational justification or coherent assertion of error. For instance, zer's meritless attack on Dill's briefing and zer's claim — after noting evidence in the record to support each of the motion's subparts — that the magistrate nevertheless had insufficient evidence to grant Dill's motion are examples of meritless arguments. Combs twice asserts error regarding a two-faceted legal principle — bias or law of the case — without clearly indicating which part of the doctrines zer intends to apply. In addition, Combs faults the magistrate for ruling that prior orders of the case remained effective while at the same time, paradoxically, faulting her for failing to apply the law of the case. Finally, Combs' reply brief cites to matters not in the record. Thus, we conclude Combs' appeal was frivolous.

¶ 40 Accordingly, we grant Dill's request for an award of attorney fees against Combs and counsel incurred on appeal. We exercise

our discretion under C.A.R. 39.1 to remand this issue to the district court for a determination of a reasonable amount of those fees.

## IX.    Disposition

¶ 41    The order is affirmed, and the case is remanded for the district court to award reasonable appellate attorney fees to Dill.

JUDGE DUNN and JUDGE NAVARRO concur.