22CA0977 Peo v Delgado-Cruz 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0977
El Paso County District Court No. 21CR3330
Honorable David Shakes, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Roberto Carlo Delgado-Cruz,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Grove and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Roberto Carlo Delgado-Cruz, fatally shot a man outside a 7-Eleven store in Colorado Springs. The jury rejected his self-defense claim and convicted him of first degree murder.

¶ 2 On appeal, he contends that the court made two erroneous evidentiary rulings that undermined his theory of self-defense, exhibited bias against the defense, and improperly granted the prosecution's motion for costs without a hearing. We discern no reversible error and therefore affirm the judgment of conviction.

## I.    Background

¶ 3 The events that led to the shooting occurred over two nights in June 2021. The interactions between Delgado-Cruz and the victim on those nights were captured on surveillance video (without audio).

¶ 4 The night before the shooting, Delgado-Cruz went to a 7-Eleven store (Chelton 7-Eleven) and left without paying for several items. The victim, an employee of the Chelton 7-Eleven, chased after Delgado-Cruz, but Delgado-Cruz sped away in a van.

¶ 5 The next night, Delgado-Cruz and two other men returned to the Chelton 7-Eleven. The three men entered the store, but when

they noticed that the clerk, who recognized Delgado-Cruz from the previous night, was calling the police, they left.

¶ 6      About ten minutes later, Delgado-Cruz pulled up at another 7-Eleven store (Circle 7-Eleven). He entered the store alone and went to the counter to buy cigarettes. Within a few seconds, the victim walked into the store and approached Delgado-Cruz in a confrontational manner. According to the Circle 7-Eleven clerk, the two men argued but both remained relatively calm, and, as the video confirms, the argument did not escalate to a physical altercation. Once the purchase was complete, the men left the store. As soon as he was outside, Delgado-Cruz pulled out a gun, aimed it at the victim, and a few seconds later, shot him ten times.

¶ 7      Police arrested Delgado-Cruz the next morning. After initially denying any involvement in the shooting, Delgado-Cruz told police that he fired at the victim in self-defense. He claimed that just moments before the shooting, the victim told him "I'm going to shoot you like I shot your friend."

¶ 8      Delgado-Cruz did, in fact, have a friend who had recently been seriously wounded by an unknown shooter during a drug deal.

After the shooting at the Circle 7-Eleven, police discovered that the victim had been carrying a large amount of cash and had drugs and drug paraphernalia in his car.

¶ 9     Delgado-Cruz sought to introduce evidence that the victim was a drug dealer and had an ongoing rivalry with the friend.  The court allowed Delgado-Cruz to establish that the friend had been shot, but it excluded evidence of the victim's alleged drug dealing as irrelevant and unduly prejudicial.  Still, the victim's prior felony convictions for possession with intent to distribute a controlled substance and menacing with a deadly weapon were admitted for a limited purpose under CRE 806.

¶ 10    Delgado-Cruz did not testify at trial.  Relying on his statements to police, he argued through counsel that after the victim threatened to shoot him and appeared to take a step forward even after the gun was drawn, he killed the victim in self-defense.

¶ 11    The jury rejected the self-defense claim and found Delgado-Cruz guilty of first degree murder.

## II. Challenges to Evidentiary Rulings

¶ 12 Delgado-Cruz contends that the court erred by excluding evidence that the victim was a drug dealer and by admitting a detective's testimony about acts depicted in the surveillance video.

### A. Standard of Review and Preservation

¶ 13 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Miller*, 2024 COA 66, ¶ 40. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 14 If the evidentiary claim is preserved, we assess whether an error requires reversal under a harmless error standard. *See People v. Curren*, 2014 COA 59M, ¶ 49. Under this standard, we reverse only if the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Hagos v. People*, 2012 CO 63, ¶ 12.

¶ 15 The parties agree that both claims of error are preserved. We will follow suit and assume preservation, though we are skeptical that Delgado-Cruz raised in the trial court the specific argument concerning the drug dealer evidence that he presents on appeal.

4

## B. Exclusion of Drug Dealing Evidence

¶ 16    As noted, Delgado-Cruz told police that the victim had threatened to shoot him, just as he had shot Delgado-Cruz's friend. The Circle 7-Eleven clerk, however, testified that he never heard the victim threaten Delgado-Cruz.

¶ 17    On appeal, Delgado-Cruz contends that evidence the victim was a drug dealer was relevant to "corroborate" his statement that the victim had threatened to do to him what he had done to the friend. As we understand his argument, Delgado-Cruz says that evidence of the victim's drug dealing would establish that the victim likely knew the friend had been shot which, in turn, would make it more likely that the victim had uttered the alleged threat. We are not persuaded.

¶ 18    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

¶ 19    Delgado-Cruz's argument falters at the first step. He says that evidence that the victim was a drug dealer, particularly that he was the friend's "competitor," made it more probable that the victim knew the friend had been shot. But the only evidentiary support for this proposition is Delgado-Cruz's statement to police that "on the streets, everything is known." That statement does not provide a sufficient link to render evidence of the victim's alleged drug dealing relevant.

¶ 20    Regardless, even if the victim's drug dealing made it more likely that he knew about the friend's shooting incident, the victim's knowledge of the shooting incident did not make it any more likely that Delgado-Cruz was telling the truth when he said the victim threatened him. True, if the victim did *not* know about the friend having been shot, it is less likely that he made the specific threat alleged — that he would shoot Delgado-Cruz "like [he] shot [the] friend." But the inverse is not true. The mere fact that the victim might have known about the shooting does not make it any more

likely that he said those words to Delgado-Cruz. That is, the victim's possible knowledge of the shooting does not "corroborate" Delgado-Cruz's statement to police or otherwise bolster his credibility. *See People v. Knight*, 167 P.3d 147, 152–53 (Colo. App. 2006) (evidence is properly excluded when its relevance relies on an inference that is speculative and has no support in the record).

¶ 21    Moreover, even if the evidence had some minimal probative value, we cannot say that the trial court abused its discretion by determining that the evidence was unduly prejudicial under CRE 403. As the pretrial proceedings demonstrate, admission of the evidence risked diverting the jury's attention to collateral issues and suggesting a decision on an improper basis. *See, e.g., People v. Clark*, 2015 COA 44, ¶¶ 18, 47 (a trial court should exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, has the potential to confuse the jury, or has an undue tendency to suggest a decision on an improper basis).

¶ 22    We also disagree that the evidence of drug dealing was relevant to show that the victim had a motive to threaten to kill

Delgado-Cruz based on his mere association with the friend. That theory of relevance depends on an inference that drug dealers are indiscriminately violent and, therefore, because the victim was a drug dealer, he probably wanted to kill Delgado-Cruz for an insignificant reason. As another division has concluded, that required inferential leap "is a leap too far." *People v. Toro-Ospina*, 2023 COA 45, ¶ 53 (affirming, in a self-defense case, the trial court's exclusion of evidence that the victim was a drug dealer).

¶ 23     Because the drug dealing evidence was not relevant for these proffered purposes, we conclude that the trial court did not err by excluding it.

C.     Admission of Opinion Testimony Regarding the Video

¶ 24     A surveillance video admitted into evidence showed Delgado-Cruz and two passengers drive up to the Chelton 7-Eleven shortly before the shooting at the Circle 7-Eleven. The video recorded the occupants' actions while they were parked in the van for about a minute before Delgado-Cruz got out of the driver's seat and went inside the store.

¶ 25    Over defense counsel's objection, the court allowed a detective who had reviewed the surveillance video and digital photographs to testify about what he saw on the video.  The detective said that he "observed [Delgado-Cruz] handl[e] an object in his right hand," then "lean[] his body back a little bit" and "tuck[] [an] object down into his waistband area."  According to the detective, "the object in [Delgado-Cruz's] right hand appeared consistent with how a firearm would appear, or a handgun."

¶ 26    Delgado-Cruz contends that the detective's identification of the object as a gun was inadmissible lay opinion testimony.

¶ 27    Under CRE 701, a lay witness may give an opinion if it is, among other things, based on the witness's perception and helpful to the determination of a fact in issue.  "Lay opinion testimony is permitted under Rule 701 because 'it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a firsthand witness to a particular event.'"  *People v. McFee*, 2016 COA 97, ¶ 76 (citations omitted).  But a witness may not form conclusions for jurors that they are

9

competent to reach on their own. *Id.* Ordinarily, then, if a witness is in precisely the same position as the jury to interpret a video recording, his opinion as to what is shown on the recording is inadmissible under Rule 701. *See People v. Vergari*, 2022 COA 95, ¶ 19; *cf. Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996) (holding that a witness can testify regarding the identity of a person depicted in a photograph or video if there is some basis for concluding that the witness is more likely than the jury to correctly identify the defendant).

¶ 28    Delgado-Cruz argues that the detective was in no better position than the jury to identify the object in his hand. Even assuming the court erred by admitting the detective's opinion testimony, we conclude that any error is harmless.

¶ 29    Delgado-Cruz does not appear to dispute that the video shows him lean back, pull up his shirt, and put an object in his waistband. (Even if he did, we think the jury could reasonably have perceived that from the video.) Instead, he takes issue with the detective's opinion that the object was "consistent" with a gun because, he says, "[i]t is not at all clear that he has a gun." But if

the object is not a gun, the jury would have had to find that just before Delgado-Cruz went into the store where he had had a run-in with the victim the night before, he paused to put something else down the front of his pants. That is possible, to be sure, but no one remotely suggested as much at trial. During cross-examination, defense counsel did not challenge the detective's interpretation of the video or offer an alternative theory. *See People v. Vasquez,* 155 P.3d 588, 595 (Colo. App. 2006) (holding that admission of a police officer's testimony in which he identified a man in a photograph as the defendant was harmless where the defendant had the opportunity to cross-examine the officer on his testimony).

¶ 30    In any event, the jury watched the surveillance video and could determine for itself whether the object Delgado-Cruz appeared to tuck into his waistband was a gun. And because the detective qualified his opinion, saying that the object was "suspected" to be a gun, he signaled to the jury that other conclusions could be reasonable. *See McFee,* ¶¶ 78–79; *see also People v. Rodriguez,* 2021 COA 38M, ¶ 12 (no reversible error where an officer testified about what he heard on a recording, but the jury had the same

11

opportunity to hear the recording and "could decide for themselves whether the officer's interpretation was accurate").

### III. Denial of Motions to Disqualify and for a Mistrial

¶ 31 Before trial, the court ruled that "there is not to be any reference to . . . items or evidence related to [the victim's] supposed drug dealing" without an "express prior order from [the court] permitting it."

¶ 32 On the first day of testimony, during cross-examination of a crime scene investigator, defense counsel attempted to introduce evidence of items collected from the victim, including an earring, a gold tooth, and cash from his pockets. The court sustained the prosecutor's objection that the evidence was irrelevant and "a back door attempt" to "portray [the victim] as a drug dealer" in contravention of the court's prior ruling.

¶ 33 The next day, during cross-examination of the coroner, defense counsel asked if the victim "had over a thousand dollars in his pocket." The court ordered counsel to "[g]et up here." At the bench, the court asked, "So I kept that information out yesterday. Why would you think it would be admissible today?" Unpersuaded

by counsel's explanation that she was "just going through standard autopsy procedures," the court instructed the jury to disregard counsel's question.

¶ 34    That evening, defense counsel filed a motion to disqualify the trial judge and for a mistrial. The motion alleged that the judge's angry tone in ordering counsel to the bench manifested "hostility" and "ill will" toward the defense, demonstrating the judge's bias. Counsel asserted that a mistrial was necessary because the "impression [the judge's biased behavior] left on the jury [could] not be erased."

¶ 35    The court denied the motion. It explained that it had used a "stern" tone with counsel based on what it perceived as an "intentional attempt to introduce irrelevant information to the jury."

¶ 36    Over the next two days, defense counsel filed two "renewed" motions for disqualification and a mistrial. The motions did not present any new evidence of bias, though; they were rebuttals to the court's irrelevancy finding and its suggestion that counsel had intentionally violated its ruling. The court denied those motions, too.

¶ 37     On appeal, Delgado-Cruz contends that the court's "angry and aggressive 'get up here' order" showed both actual bias and an appearance of bias, requiring the judge's disqualification and a mistrial.

## A.     Legal Principles and Standards of Review

¶ 38     A judge is subject to disqualification based on both actual bias and an appearance of bias or impropriety.  *See Sanders v. People,* 2024 CO 33, ¶ 48.

¶ 39     Whether a judge harbors actual bias involves a subjective inquiry — i.e., whether the judge has a personal bias or prejudice that in all probability will prevent him from dealing fairly with a party.  *See People in Interest of A.G.,* 262 P.3d 646, 650-–51 (Colo. 2011).  A defendant asserting actual bias on the part of the trial judge must establish that the judge had a "substantial bent of mind against him." *People v. Jennings,* 2021 COA 112, ¶ 28 (citation omitted).  To make that showing, it is not enough to point to "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel." *People in Interest of*

*A.P.*, 2022 CO 24, ¶ 31 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 40　　The appearance of bias or impropriety, on the other hand, focuses on whether a "reasonable observer might have doubts about the judge's impartiality." *A.G.*, 262 P.3d at 650. The purpose of disqualification based on an appearance of bias is to protect public confidence in the judiciary. *See Jennings*, ¶ 19.

¶ 41　　Whether a trial judge should have recused is a question of law that we review de novo. *Sanders*, ¶ 25. But while both an appearance of bias and actual bias are grounds for recusal, reversal of a conviction is warranted only when the judge was actually biased. *See People v. Garcia*, 2024 CO 41M, ¶ 21. In that circumstance, reversal is automatic. *Id.*

¶ 42　　We review the trial court's denial of a motion for a mistrial for an abuse of discretion. *People v. Owens*, 2024 CO 10, ¶ 125. A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. *Id.*

## B.    Analysis

¶ 43    The trial judge's order to "get up here," even if said in an angry or aggressive tone, does not demonstrate the kind of "deep-seated . . . antagonism" required to compel disqualification or a mistrial. *A.P.,* ¶ 31 (quoting *Liteky,* 510 U.S. at 555).  Delgado-Cruz does not cite any case in which a judge's single harsh comment directed to counsel resulted in a finding of actual bias and reversal of a conviction.  Our case law is to the contrary.  *See People v. Drake,* 748 P.2d 1237, 1249 (Colo. 1988) (judge's rude comments to defense counsel, including telling counsel, "you will keep quiet," did not show actual bias); *Jennings,* ¶ 31 (judge's brief criticism of defense counsel did not reflect such intense hostility as to require recusal); *Bocian v. Owners Ins. Co.,* 2020 COA 98, ¶¶ 24–26 (judge's pointed comments to counsel concerning her ethical obligations did not demonstrate ill will or hostility warranting disqualification).

¶ 44    Delgado-Cruz does not present any separate authority or argument concerning the denial of the motion for a mistrial.  He simply asserts that the prejudice from the court's isolated comment could not be remedied by other means.  But generally, a curative

16

instruction will suffice. *See People v. Salas*, 2017 COA 63, ¶ 14. In fact, after the bench conference at issue, defense counsel informed the court that she intended to request a curative jury instruction. She never asked for an instruction, though. Under these circumstances, and given that there was no basis to disqualify the trial judge, we discern no error in the denial of the motion for a mistrial. *Cf. People v. Mersman*, 148 P.3d 199, 204 (Colo. App. 2006) (where the defendant did not request a curative instruction, the court did not abuse its discretion in denying the motion for mistrial).

## IV. Cumulative Error

¶ 45    We reject Delgado-Cruz's cumulative error claim. "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Here, we have assumed a single harmless error. The doctrine of cumulative error is therefore inapplicable. *People v. Daley*, 2021 COA 85, ¶ 142.

## V. Costs of Prosecution

¶ 46 After trial, the prosecution filed a motion to recover its costs of prosecution. Delgado-Cruz objected and requested a hearing "on his ability to pay" the costs. He did not provide any information about his financial circumstances. The court issued an order giving Delgado-Cruz an opportunity to "file any additional objection" to the prosecution's motion by a certain date, but Delgado-Cruz did not supplement his original objection. The court then granted the prosecution's motion without a hearing.

¶ 47 On appeal, Delgado-Cruz asserts that he was entitled to a hearing on his ability to pay the costs of prosecution. We review a court's imposition of costs for an abuse of discretion. *People v. Sinovcic*, 2013 COA 38, ¶ 9.

¶ 48 Ordinarily, upon the defendant's conviction, the court must enter judgment against him for the costs of prosecution. § 18-1.3-701(1)(a), C.R.S. 2024. But if the court determines that the defendant is unable to pay costs, the state must pay them. § 16-18-101(1), C.R.S. 2024.

18

¶ 49   We disagree that a defendant is entitled to a hearing on his ability to pay simply because he requests one.  Chief Justice Directive 85-31, Directive Concerning the Assessment and Collection of Statutory Fines, Fees, Surcharges, and Costs in Criminal Juvenile, Traffic and Misdemeanor Cases (amended Aug. 2011) (CJD 85-31), provides that the court "shall" waive costs "based on a review" of specified documents.  It does not mention a hearing.  And Delgado-Cruz has not directed us to any published appellate opinion requiring a trial court to hold a hearing on a defendant's ability to pay costs.

¶ 50   Even assuming a court should hold a hearing under certain circumstances, a hearing was unnecessary in this case because Delgado-Cruz's objection did not create any fact dispute that had to be resolved at a hearing.  Under CJD 85-31, the court may not waive costs unless it finds that the defendant is unable to pay them, based on a "financial affidavit or similar supporting documentation."  Delgado-Cruz's objection did not even assert that he had a present and future inability to pay costs, much less include any evidence of indigency.

¶ 51    For this reason, the failure to hold a hearing did not violate Delgado-Cruz's due process rights.  Due process is a flexible standard that calls for such procedural protections as the particular situation demands.  *See A.M. v. A.C.*, 2013 CO 16, ¶ 28.  In this situation, a defendant is entitled to "a fair and reasonable opportunity to review and object to the prosecution's request for its costs."  *People v. Palomo*, 272 P.3d 1106, 1111 (Colo. App. 2011).  Delgado-Cruz had that opportunity.  Even if additional process is sometimes available, he was not entitled to it because he failed to sufficiently plead indigency.

## VI.    Disposition

¶ 52    The judgment is affirmed.

JUDGE GROVE and JUDGE PAWAR concur.